UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

HOPE HUFFMAN                                          CIVIL ACTION

VERSUS                                                NO: 17-4480

UNIVERSITY MEDICAL CENTER                             SECTION: "H" (3)
MANAGEMENT CORP., ET AL.

## ORDER AND REASONS

Before the Court is Defendant Board of Supervisors of Louisiana State University and Agricultural and Mechanical College's Motion to Dismiss Pursuant to Rule 12(b)(6) (Doc. 36). For the following reasons, the Motion is DENIED.

## BACKGROUND

Plaintiff Hope Huffman is deaf and communicates primarily in American Sign Language ("ASL"). Plaintiff alleges that Defendants failed to accommodate her disability by providing her medical care without an ASL interpreter. Specifically, Plaintiff's Amended Complaint alleges the following.

Defendant Board of Supervisors of Louisiana State University and Agricultural and Mechanical College ("LSU") owns University Medical Center

1

New Orleans ("University Medical Center"), a full-service hospital. Defendant University Medical Center Management Corporation ("UMCMC") leases and operates University Medical Center. The sole member of Defendant UMCMC is Defendant Louisiana Children's Medical Center ("LCMC"). Defendants entered into a Cooperative Endeavor Agreement in which LSU contracts with UMCMC to operate University Medical Center and provide the healthcare services that LSU has the legal authority to provide. The agreement contains a non-discrimination clause mandating compliance with the Americans with Disabilities Act and Rehabilitation Act in the operation of the hospital. Defendant LSU maintains control over the operation of the hospital by, inter alia, maintaining the infrastructure, providing nursing support, and employing a monitor to ensure UMCMC's compliance with the cooperative endeavor agreement.

Plaintiff received treatment at University Medical Center on two occasions, the first lasting multiple days. She requested an ASL interpreter both times, but was denied. Defendants failed to meaningfully assess Plaintiff's communication needs, failed to ask Plaintiff about her communication preference, and often forced Plaintiff to communicate via lip-reading or written notes, which are ineffective for Plaintiff. Overall, Plaintiff was unable to meaningfully engage in her treatment. The only instance of accommodation was when Defendants used a Video Remote Interpreting machine to explain Plaintiff's discharge instructions.

During the first treatment instance, Defendants prescribed Plaintiff medication. Because they did not provide her with an interpreter or other assistive device, Plaintiff did not understand what the medication was, why she was given it, whether it produced any side effects, or what the proper dosage was. During the second treatment instance, Defendants prescribed

Plaintiff Motrin for post-procedure pain. Plaintiff is unable to take Motrin, but could not discuss alternative pain medications with her doctors because no accommodation was provided. Plaintiff also attends ongoing physical therapy provided by Defendants and has not received an interpreter.

Plaintiff alleges that Defendants' failure to provide an interpreter led to her receiving substandard medical treatment, caused her to endure emotional distress, and presently deters Plaintiff from seeking further medical treatment from Defendants even though they are the most convenient provider.

Plaintiff alleges that the foregoing facts constitute violations of several anti-discrimination statutes. Against all Defendants, Plaintiff makes a claim for violations of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and for violations of Section 1557 of the Patient Protection and Affordable Care Act ("ACA"), 42 U.S.C. § 18116. Against Defendant LSU, Plaintiff makes a claim for violations of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132.[1]

Plaintiff seeks a declaratory judgment that Defendants' actions have violated the statutes listed above, an injunction ordering Defendants to take specific steps to accommodate Plaintiff and similarly situated persons, compensatory damages pursuant to the ADA, Rehabilitation Act, ACA, and Louisiana Commission on Human Rights, and fees and costs.

Defendant LSU now moves to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that it fails to allege that LSU was responsible for the purported discrimination.

---

[1] Plaintiff also makes claims against Defendants UMCMC and LCMC for violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182, and for violations of the Louisiana Commission on Human Rights, La. Rev. Stat. § 51:2247.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face."[2] A claim is "plausible on its face" when the pleaded facts allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[3] A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor."[4] The Court need not, however, accept as true legal conclusions couched as factual allegations.[5]

To be legally sufficient, a complaint must establish more than a "sheer possibility" that the plaintiff's claims are true.[6] "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" will not suffice.[7] Rather, the complaint must contain enough factual allegations to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim.[8]

## LAW AND ANALYSIS

Title II of the ADA states that, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."[9] A "public entity" includes "any State or local government" and "any department, agency, special purpose

---

[2] Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).
[3] *Id.*
[4] Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232 (5th Cir. 2009).
[5] *Iqbal*, 556 U.S. at 678.
[6] *Id.*
[7] *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).
[8] *Lormand*, 565 F.3d at 255–57.
[9] 42 U.S.C. § 12132 (2012); *see also* Hainze v. Richards, 207 F.3d 795, 799 (5th Cir. 2000) (explaining the statutory scheme).

district, or other instrumentality of a State or States or local government."[10] Section 504 of the Rehabilitation Act of 1973 establishes an otherwise identical prohibition that is limited to recipients of federal funding.[11] "Jurisprudence interpreting either section is applicable to both."[12] Finally, Section 1557 of the ACA extends the protections of Section 504 of the Rehabilitation Act to entities associated with the government in the context of the ACA.[13] Plaintiff therefore advances essentially one claim against Defendant LSU, cognizable through three separate statutes.

"A plaintiff states a claim for relief under Title II if he alleges: (1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability."[14]

Defendant LSU argues that Plaintiff has failed to allege facts that make LSU responsible for any discrimination that occurred. According to Defendant, Plaintiff's allegations that she did not receive interpretation services during her medical treatment have nothing to do with the owner of the building, LSU, in which the treatment was delivered. Defendant LSU does not dispute that LSU is a state entity or that any discrimination that did occur was a result of Plaintiff's disability. Plaintiff argues that the allegations in the Amended Complaint that Defendant LSU contracted with Defendants LCMC and UMCMC to provide medical services at the hospital and that LSU continues to exercise at least some operational control over LCMC and UMCMC are

---

[10] 42 U.S.C. § 12131.
[11] *See* 29 U.S.C. § 794.
[12] *Hainze*, 207 F.3d at 799.
[13] *See* 42 U.S.C. § 18116.
[14] Hale v. King, 642 F.3d 492, 499 (5th Cir. 2011) (citing Melton v. Dallas Area Rapid Transit, 391 F.3d 669, 671 (5th Cir. 2004)).

sufficient to claim that the medical services provided at the hospital are a service, program, or activity of LSU. Specifically, Plaintiff alleges that LSU entered into a cooperative endeavor agreement with UMCMC "to provide at UMCNO the healthcare services that 'LSU has the legal authority to provide.'"[15]

Because at the 12(b)(6) stage the allegations of the complaint are presumed to be true, the issue before the Court is whether the provision of healthcare by a private entity in a state-owned hospital and pursuant to a cooperative endeavor agreement with the state entity that owns the hospital is a service, program, or activity of the state entity.

The Fifth Circuit's opinion in *Ivy v. Williams* is helpful, although it was vacated by the Supreme Court on a separate standing issue.[16] In that case several deaf individuals sued the Texas Education Agency ("TEA") for violating the ADA by failing to ensure that driver education courses were accessible to them.[17] Texas required prospective drivers to obtain a certificate of driver education, available only from private schools licensed by the TEA.[18] The plaintiffs could not find a TEA-licensed school that would accommodate their disability and so could not obtain a driver's license.[19]

The TEA moved to dismiss the plaintiffs' claims on the grounds that driver education was not a "service, program, or activity" of the TEA, as required by Title II of the ADA.[20] The court noted that the issue was "a close question for which the statutes, regulations, and case law provide little

---

[15] Doc. 23 ¶ 13.
[16] *See* Ivy v. Williams, 781 F.3d 250, 251 (5th Cir. 2015), *vacated and remanded sub nom.* Ivy v. Morath, 137 S. Ct. 414 (2016).
[17] *Id.* at 252.
[18] *Id.*
[19] *Id.*
[20] *Id.* at 253, 255.

concrete guidance."[21] The court looked first to the Supreme Court, which has referred to a "service, program, or activity" that a public entity *provides*.[22] The Fifth Circuit found that the TEA was not providing the service of driver education.[23]

The court next looked to regulations implementing the ADA. "Section 35.130(b)(1) [of Title 28 of the Code of Federal Regulations] provides that a public entity cannot discriminate against qualified individuals with disabilities 'in providing any aid, benefit, or service,' whether the state acts 'directly or through contractual, licensing, or other arrangements.'"[24] The court acknowledged that the regulations purport to extend state liability to at least some relationships with private entities, but found that the regulations again do not define what it means to "provide" a benefit or service, even by contract.[25] The court did find that regulations pertaining to state entities that merely license private actors, as opposed to contract with them, limit state liability under the ADA.[26]

In terms of case law, the court concluded that public liability for a private actor's inaccessibility hinges on whether or not the two have a contractual or agency relationship.[27] The court observed that interpretive guidance from the

---

[21] *Id.* at 255.
[22] *Id.* (citing Pa. Dep't of Corr. v. Yeskey, 524 U.S. 206, 210 (1998)).
[23] *Id.*
[24] *Id.* (citing 28 C.F.R. § 35.130(b)(1)).
[25] *Id.* at 256.
[26] *Id.*
[27] *See id.* at 256–57. "The only other cases that have held a public entity liable for a private actor's inaccessibility involved similar situations where the private actors had a contractual or agency relationship with the public entity. *See, e.g., Castle v. Eurofresh, Inc.*, 731 F.3d 901, 910 (9th Cir. 2013) (holding that state could be liable under ADA for inaccessibility of company it contracted with to provide state inmates with jobs); *Indep. Hous. Servs. of S.F. v. Fillmore Ctr. Assocs.*, 840 F. Supp. 1328, 1344 (N.D. Cal. 1993) (holding that '[t]he crucial distinction' that rendered the public entity liable for a private actor's inaccessibility was that the public entity 'ha[d] contracted with [the private actor] for [it] to provide aid, benefits, or services to beneficiaries of the [public entity's]

Department of Justice also embodied such a distinction, pointing to a "joint venture" between a city and a private corporation as an example of when a public entity could be liable.[28] Ultimately, the court concluded that driver education was merely a heavily regulated industry, rather than a program of the state, and declined to find the TEA responsible for the schools' ADA compliance.[29]

This Court finds the Fifth Circuit's reasoning persuasive, at least with regard to the liability of state actors that have contracted with private entities. The Fifth Circuit held that the TEA was not liable because it did not have a contractual relationship with the inaccessible private entities.[30] Here, Plaintiff has alleged that Defendant LSU entered into a "Cooperative Endeavor Agreement" with Defendants UMCMC and LCMC for the purpose of providing healthcare services that Defendant LSU is authorized to provide.[31] As explained in *Ivy*, courts and regulatory agencies have consistently found that state entities who contract with a private entity for the provision of services are liable when the private entity denies a person those services because of a disability.[32] That is exactly what Plaintiff has alleged, and at this stage in the

---

redevelopment program'). In the absence of such a contractual or agency relationship, courts have routinely held that a public entity is not liable for a licensed private actor's behavior. *See, e.g., Noel v. N.Y.C. Taxi & Limousine Comm'n*, 687 F.3d 63, 72 (2d Cir. 2012) (holding that public entity is not liable for inaccessible taxi companies it licenses and regulates); *Bascle v. Parish*, No. 12–CV–1926, 2013 WL 4434911, at *5–6 (E.D. La. Aug. 14, 2013) (same); *Reeves v. Queen City Transp., Inc.*, 10 F. Supp. 2d 1181, 1187 (D. Colo. 1998) (holding that public utility company is not liable for inaccessible bus company it licenses where there is no contract between them); *Tyler v. City of Manhattan*, 849 F. Supp. 1429, 1441–42 (D. Kan. 1994) (holding that city is not liable for inaccessible restaurants and liquor stores it licenses)." *Id.*

[28] *Id.* at 257 (citing Department of Justice, Title II Technical Assistance Manual § II–1.3000).
[29] *Id.* at 257–58.
[30] *See id.* (Weiner, J., dissenting) ("The majority opinion rests its holding on its perceived distinction between contractual and agency relationships, on the one hand, and licensing relationships on the other.").
[31] Doc. 23 ¶ 13.
[32] *Ivy*, 781 F.3d at 255–58.

proceedings such an allegation is sufficient to proceed. Accordingly, Defendant's Motion is DENIED.

## **CONCLUSION**

For the foregoing reasons, Defendant LSU's Motion to Dismiss is DENIED.

New Orleans, Louisiana this 31st day of October, 2017.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**